**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ANTHONY DANKO,** | **§** | |
| **PLAINTIFF,** | **§** | |
| | **§** | |
| **VS.** | **§** | **CIVIL ACTION NO. 4:05-CV-153-BE** |
| | **§** | |
| **UNION PACIFIC RAILROAD CO.,** | **§** | |
| **DEFENDANT.** | **§** | |

**MEMORANDUM OPINION AND ORDER**

Defendant Union Pacific Railroad Company has filed a Motion for Summary Judgment [doc. # 57] with respect to all claims asserted by the plaintiff, Anthony Danko. Having considered the motion and response, the court finds that the motion should be granted in part and denied in part.

A. BACKGROUND AND PROCEDURAL HISTORY

Danko has worked for Union Pacific since June 1990, and has been a locomotive engineer since 1992. He filed suit against his employer on March 3, 2005 under the Federal Employer's Liability Act (FELA), 45 U.S.C. § 51, the Locomotive (Boiler) Inspection Act, 49 U.S.C. § 20701, and related regulations.[1] He claims that his work as an engineer resulted in injury to and arthritis in his wrists; bilateral carpel tunnel syndrome; and a torn rotator cuff.[2] He seeks damages for his injuries, including lost wages, lost benefits, diminished earning capacity, and future medical expenses. Union Pacific asserts that it is entitled to summary judgment because Danko lacks competent evidence to support his causes of action and allegations of damages, or alternatively, because his claims are time-barred.

---

[1] Danko initially asserted claims under the Safety Appliance Act, 49 U.S.C. § 20301 et seq., but has now abandoned those claims. (Pl. Mem. 1).

[2] Danko previously claimed that he sustained a work-related elbow injury as well, but no longer pursues damages for this injury. (Pl. Sur-Reply 7).

B. STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). The movant bears the initial burden of showing that no genuine issue of material fact exists, but once the movant makes such a showing, the burden shifts to the nonmovant to produce competent summary judgment evidence of the existence of a genuine issue of material fact. *Anderson*, 477 U.S. at 256-57, 106 S.Ct. at 2514, 91 L.Ed.2d 202.

An issue is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the nonmovant. *Id*. at 248, 106 S.Ct. at 2510. A fact is material if its resolution would affect the outcome of the suit under the governing law. *Id.* The court views all of the evidence and inferences therefrom in the light most favorable to the nonmovant. *Hibernia Nat'l Bank v. Carner*, 997 F.2d 94, 97 (5th Cir. 1993).

C. DISCUSSION

1. FELA

a. Causation

Union Pacific asserts that Danko has not provided competent evidence that would support a jury's verdict that his injuries were caused by his employment with the railroad. The Federal Employers' Liability Act provides:

> Every common carrier by railroad while engaging in [interstate] commerce…shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce…for such injury or death **resulting in whole or in part**

> from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51 (emphasis added). Under this statute, the test is whether the proof justifies the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.[3] *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957).

Union Pacific urges that Danko has not submitted necessary expert opinion evidence to establish that his injuries are work-related because the most Danko's treating physicians say is that his injury is possibly job related. A jury question on causation in a FELA case can be created without expert testimony directly addressing the issue of causation. *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 268 (6th Cir. 2001). Danko has provided a description of the physical requirements of his job and his strenuous work schedule. (Plf. App. 17-32, 24). His treating physician also described the type of activities most likely to cause carpal tunnel syndrome and shoulder injuries like Danko sustained, (Plf. App. 48-54), which a jury could compare to Danko's job description. In addition, Danko has produced expert opinion evidence[4] from Lawrence Schulze, Ph.D., and Lewis C. Barbe that Danko's work presents risk factors consistent with the development of cumulative trauma injuries, including carpal tunnel syndrome, osteoarthritis, and a torn rotator

---

[3] Damages will be reduced in proportion to any contributing negligence by the employee. *See* 45 U.S.C. § 53. A single standard of causation applies when assessing both the negligence of the railroad and the negligence of the employee. *Norfolk S. Ry. Co. v. Sorrell*, __ U.S. __, 127 S.Ct. 799, 166 L.Ed.2d 638 (2007); *Page v. St. Louis Sw.Ry. Co.*, 349 F.2d 820 (5th Cir. 1965).

[4] Union Pacific has challenged Danko's evidence as lacking foundation; failing to identify the education, experience and methodology followed by the experts; and consisting of legal conclusions and hearsay. Danko subsequently supplied the curriculum vitae and expert reports prepared by Schulze and Barbe. Moreover, objections related to the experts' reliance on hearsay or their opinions on ultimate legal issues are not well-taken under Federal Rules of Evidence 701-705. *See generally* FED. R. EVID. 701-05.

cuff. (Plf App. 68, 80; Plf. App. to Surreply 1-47,48-68).

Given the evidence from Danko's treating physician and the designated experts, and Danko's own description of the requirements of his job, the court finds that there are genuine issues of material fact that preclude summary judgment on the issue of causation.

b. Aggravation of Preexisting Conditions

Union Pacific and Danko disagree about the existence of a separate cause of action for aggravation of a preexisting condition. FELA is not intended to be a worker's compensation statute and does not render the employer the insurer of the safety of his employees while they are on duty. *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 543, 114 S.Ct. 2396, 2404, 129 L.Ed.2d 427 (1994). The basis of the employer's liability is his negligence, not the fact that injuries occur. *Id*. at 543, 114 S.Ct. at 2396; *Ellis v. Union Pac. R.R. Co.*, 329 U.S. 649, 653, 67 S.Ct. 598, 600, 91 L.Ed. 572 (1947).

Danko relies on *Fletcher v. Union Pacific Railroad Company*, 621 F.2d 902, 908 (Neb. Ct. App. 1980); however, a review of that case indicates that the court was concerned with the nature of an employer's continuing tort after the employer was aware that the employee's condition rendered him unsuitable for the work assigned. The court did not address the existence of an independent cause of action for the aggravation of any preexisting injury. Conversely, the Fifth Circuit has disapproved of a plaintiff's claim for aggravation of injuries absent proof that the employer has committed a new, separate tort. *Crisman v. Odeco*, 932 F.2d 413, 417 n.5 (5th Cir. 1991). The Fifth Circuit panel found that simply continuing to assign an employee to his job, without more, is insufficient. *Id.* In addition, aggravation is identified in the Fifth Circuit Pattern Jury Charges as one element of recoverable damages, not as an independent basis for a finding of

liability. FIFTH CIR. PATTERN JURY CHARGES §15.5 (2006). To the extent Danko asserts a separate cause of action for aggravation of preexisting injuries, his claim fails as a matter of law.

c. Negligent Work Assignment

Danko alleges that Union Pacific was negligent in continuing to assign him to his job as an engineer despite knowing he was susceptible to injury of his upper extremities, and that Union Pacific's negligence caused him further injury and aggravation of his carpal tunnel syndrome as well as new and more serious injuries.

A railroad's duty to create a reasonably safe work environment encompasses the duty to assign an employee to work for which he is reasonably suited. *Rivera v. Union Pac. R.R. Co.*, 378 F.3d 502, 507 (5th Cir. 2004). The railroad breaches that duty if it negligently assigns its employee to perform work beyond his or her physical capacity–that is, if the railroad knew or should have known of the employee's diminished work capacity and, in spite of that knowledge, the railroad continued to assign the employee to tasks it knew or should have known would aggravate his physical condition. *Id*.

Danko has produced evidence that Union Pacific was aware of his injuries in December 2002 and allowed him time off under the Family Medical Leave Act so that he could have surgery on his shoulder and undergo a bilateral carpal tunnel release. He complains that, after he returned to work, Union Pacific did not offer him a position that would not require him to use his hands and shoulders in the same manner as he did before surgery, nor did they require him to submit to a medical review to ascertain his fitness for duty. Danko also asserts that his carpal tunnel syndrome has returned and that he needs additional surgery on his left rotator cuff. (Plf. App. 160-63).

Nonetheless, the evidence demonstrates that Danko's surgeon released him to return to work

in February 2003 without restriction, and none of his doctors have opined that he should not be working as an engineer. (Def. App. 13, 67). Danko did not seek medical care for hand, wrist, elbow, or shoulder problems between 2003 and 2006. (Def. App. 13). He has not asked for a different work assignment at Union Pacific or requested a transfer, and stated that he had no interest in any other work with the railroad. (Def. App. 8).

The most Danko has demonstrated is that Union Pacific was aware that he had sustained an injury requiring medical care. Danko has failed to create a fact issue regarding whether Union Pacific knew or should have known that they were assigning him to work that exceeded his physical capacity. *Cf. Emmons v. S. Pac. Transp. Co.*, 701 F.2d 1112, 1121 (5th Cir. 1983)(rejecting suggestion of employer negligence in continuing to assign employee to work absent evidence employee attempted to transfer jobs or informed employer that work was causing him problems). Union Pacific is entitled to judgment as a matter of law on Danko's cause of action for negligent assignment.

d. Statute of Limitations

Union Pacific contends that summary judgment is appropriate because Danko's claims are time-barred. FELA requires that suit be commenced within three years from the date that the cause of action accrues. 45 U.S.C. § 56. Danko filed suit on March 3, 2005. He asserts that he was not aware before March 3, 2002 that he had permanent work-related injuries, and thus, his claims did not accrue more than three years before he commenced this action.

Accrual of a cause of action for a latent or cumulative occupational injury follows the discovery rule: A cause of action accrues when the claimant becomes aware–or reasonably should be aware–that he has been injured and that the cause of his injury is work-related. *Emmons*, 701

F.2d 1112, 1119 (5th Cir. 1983)(citing *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed.2d 1282 (1949)). The accrual of the claim does not depend on the plaintiff's ignorance of his legal rights or his awareness that his injuries were the result of negligence. *See United States v. Kubrick*, 444 U.S. 111, 122-23, 100 S.Ct. 352, 359-60, 62 L.Ed.2d 259 (1979)(addressing similar limitations question under Federal Tort Claims Act).

Danko argues that none of his problems were diagnosed more than three years before he filed suit and that his symptoms were only intermittent before March 2002 and did not put him on notice that he had sustained any actionable injury at work. He admitted during his deposition that his symptoms occurred only when he was working or sleeping. (Plf. App. 34). Danko also completed an injury report that he submitted to Union Pacific in December 2002 that indicated that his symptoms began the previous year, but in his deposition, he described his symptoms as "very seldom and far between" until March 2002. (Plf. App. 31-34, 39). He further denied knowing that he had carpal tunnel syndrome until testing confirmed that diagnosis in April 2002, although he had previously suspected that might be the cause of his symptoms. (Plf. App. 38-39). As for his shoulder injury, the medical records contain only a notation of "shoulder strain" in November 2001, and Danko contends that he had no reasons to believe at that time that a strain would not heal on its own or that his shoulder symptoms were the result of a more serious injury. Because his symptoms did not resolve, he returned to his primary care physician on March 14, 2002 and obtained a referral to an orthopedic specialist. Danko asserts that he was unaware that he had a torn rotator cuff and bone spur or that the injury was work-related until he spoke with orthopedic specialist Luiz Toledo on October 31, 2002. Danko further asserts that Union Pacific never educated him on carpal tunnel syndrome or shoulder injuries as occupational-related disorders. (Plf. App. 162).

It is generally not necessary that the plaintiff be formally advised by a physician that his condition is work-related. *Emmons*, 701 F.2d at 1122. The issue is when a plaintiff discovered or reasonably should have discovered both the cause and the injury. *Bealer v. Missouri Pac. R.R. Co.*, 951 F.2d 38, 39 (5th Cir. 1991). Some of Danko's symptoms manifested themselves before 2002, and his evidence regarding his awareness of the onset of his symptoms and their severity is somewhat inconsistent,[5] but construing the evidence most favorably to the plaintiff, the court finds that a material issue of fact remains as to when Danko became aware or should have been aware that he had work-related injuries.

2. Locomotive Inspection Act

Negligence is not the basis for liability under the Locomotive Inspection Act;[6] instead, the Act imposes an absolute and continuing duty on a railroad carrier to provide safe equipment:

> A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances–
>
> (1) are in proper condition and safe to operate without unnecessary danger of personal injury;
> (2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and
> (3) can withstand every test prescribed by the Secretary under this chapter.

---

[5] Union Pacific refers to the Sixth Circuit's opinion in *Campbell v. Grand Trunk Railroad Co.*, 238 F.3d 772 (6th Cir. 2001), to support its position that Danko was experiencing symptoms that, with reasonable diligence, should have led him to the conclusion before March 2002 that he had sustained a work-related injury. *Campbell* is factually distinguishable. Campbell was a railcar repairman who began experiencing pain, tingling and numbness in his hands in 1994 and 1995 that was so severe as to awaken him from sleep. Moreover, Campbell admitted that he was experiencing symptoms on a daily basis while operating power tools at work, but he waited until 1998 to see a physician who diagnosed carpal tunnel syndrome. *Id.* at 775. The circuit court affirmed the district court's judgment that Campbell's FELA claim was time-barred as a matter of law. *Id.* at 776-77. *Compare Fonseca v. Consolidated Rail Corp.*, 246 F.3d 585, 589-91 (6th Cir. 2001)(overturning summary judgment for carrier because there was genuine issue of fact whether temporary and intermittent discomfort put plaintiff on notice of his claims for purposes of limitations).

[6] A cause of action under the Locomotive Inspection Act is brought as a FELA action. *Urie v. Thompson*, 337 U.S. 163, 188-89, 69 S.Ct. 1018, 1033-34, 93 L.Ed.2d 1282 (1949); *Frass v. Southern Pac. Transp. Co.,* 810 F.Supp. 189, 190 (S.D. Miss. 1993).

49 U.S.C.A. § 20701. *See Lilly v. Grand Trunk W. R.R. Co.*, 317 U.S. 481, 485, 63 S.Ct. 347, 351, 87 L.Ed. 411 (1943); *Gregory v. Missouri Pac. R.R. Co.*, 32 F.3d 160, 161 (5th Cir. 1994). In enacting the predecessor liability statute,[7] Congress recognized that the operation of a locomotive, no matter how it is equipped, involves some danger to life and limb. *Gregory*, 32 F.3d at 165. Accordingly, the Act does not address all perils associated with operating locomotives, only unnecessary ones. *Id*. A violation of the Act can be established in two ways: The carrier may breach its duty to keep all parts and appurtenances in proper condition and safe to operate without unnecessary peril, or the carrier may breach a more specific duty by failing to comply with regulations issued by the Federal Railroad Administration (FRA). *McGinn v. Burlington N. R.R. Co.*, 102 F.3d 295, 299 (7th Cir. 1996). The Act is to be liberally construed in light of its primary purpose of protecting employees and others by requiring the use of safe equipment. *Lilly*, 417 U.S. at 486, 63 S.Ct. at 351.

Danko urges that the controls in the locomotive are defective, do not function correctly, and render the locomotive cab unreasonably dangerous. Danko has described in detail the hand, arm, and shoulder movements required to operate the throttle, brakes, and horn on the locomotive, and complains that the awkward positioning of the controls contributed to his carpal tunnel syndrome, development of a bone spur, and a torn rotator cuff. His designated experts have likewise opined that the design of the locomotive cab is not ergonomically sound, and that the repetitive motion and

---

[7] The previous version of the Locomotive (Boiler) Inspection Act provided:

> It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb.

*See* 45 U.S.C. § 23 (repealed 1994).

constant manipulation requirements endanger the crew's safety. But Danko concedes that all of the equipment, controls, and levers that he operated were in proper working order at all times relevant to his claims, and he admits that federal regulations required him to submit a work order for any broken equipment, which Union Pacific would then repair. (Def. App. 6-7).

Conditions other than mechanical imperfections can render equipment unsafe to operate without unnecessary peril to life or limb. *Lilly*, 317 U.S. at 488, 63 S.Ct. at 352 (1943). But the Supreme Court, in a suit brought pursuant to a previous version of the Locomotive (Boiler) Inspection Act, has noted that a master is not bound to furnish the latest or best tools or appliances for the use of his servants. *Baltimore & O.R. Co. v. Groeger*, 266 U.S. 521,529, 45 S.Ct. 169, 172, 69 L.Ed. 419 (1925). More specifically, the Court ruled that a defendant employer was not liable under the Act for failing to supply its employee with "the best mechanical contrivances and investions or [failing] to discard appliances upon discover of later improvements, provided the boiler was in proper condition and safe to operate, as required by the statute." *Id*. at 529, 45 S.Ct. at 172. Danko has not demonstrated that the locomotive controls and levers, which were operating as intended and designed, presented an unreasonable danger or created an unnecessary peril as contemplated by the Locomotive Inspection Act.

Danko also suggests that the condition of the locomotive violated the following administrative safety regulation, rendering the equipment per se unsafe:

> All systems and components on a locomotive shall be free of conditions that endanger the safety of the crew, locomotive or train. These conditions include: insecure attachment of components, including third rail shoes or beams, traction motors and motor gear cases, and fuel tanks; fuel, oil, water, steam, and other leaks and accumulations of oil on electrical equipment that create a personal injury hazard; improper functioning of components, including slack adjusters, pantograph operating cylinders, circuit breakers, contactors, relays, switches, and fuses; and cracks, breaks, excessive wear and other structural infirmities of components, including quill drives,

> axles, gears, pinions, pantograph shoes and horns, third rail beams, traction motor gear cases, and fuel tanks.

49 C.F.R. § 229.45. This regulation reiterates the general requirement of safe working conditions, and by way of example, lists a variety of mechanical problems to be avoided. It is not applicable to Danko's contentions that the design of the locomotives he operates, even when all components are in good working order, has caused or contributed to his injuries.

Danko does not identify any regulations that require a different or more ergonomic layout of the controls, levers or cab of the locomotive that would demonstrate a per se violation of the Act.[8] Instead, Danko is asking the court to find that the type and inherent design of the locomotives he operates are per se defective or unreasonably dangerous for purposes of liability under the Locomotive Inspection Act when he admits that the controls and levers he operated were all in working order and performed as intended. *Cf. Norfolk and W. Ry. Co. v. Hiles*, 516 U.S. 400, 412, 116 S.Ct. 890, 897, 134 L.Ed.2d 34 (1996)(hesitating, and ultimately declining, to adopt reading of railroad Safety Appliance Act that would suggest that almost every railroad car operating in past century violated that act). Danko's interpretation exceeds the intended scope of the Locomotive Inspection Act, even when liberally construed, and he presents no genuine issues of material fact that would preclude summary judgment on his claims arising under the Act.

3. Damages

a. Future Medical Expenses

Union Pacific asserts that it is entitled to summary judgment on Danko's claim for future medical expenses. A FELA plaintiff is entitled to recover for all past, present and probable future

---

[8] A carrier's compliance with the regulations, however, does not automatically insulate it from a negligence claim under FELA. *See Weaver v. Missouri Pac. R.R. Co.*, 152 F.3d 427 (5th Cir. 1998).

harm attributable to the defendant's tortious conduct, including pain and suffering.[9] *See Hagerty v. L & L Marine Servs., Inc*., 788 F.2d 315, 317, *modified*, 797 F.2d 256 (5th Cir.1986). Recovery of damages for future medical care requires a reasonable probability that the medical expenses will be incurred in the future. *Whatley v. Armstrong World Indus., Inc*., 861 F.2d 837, 843 (5th Cir. 1988). *See generally* FIFTH CIRCUIT PATTERN JURY CHARGE § 15.3 (addressing appropriate jury instructions for claims of future damages).

No treating or expert source has advised that Danko will require future medical care, but Danko has reported that he recently requested permission of his employer to undergo additional surgery on his left rotator cuff, which will cause him to incur unspecified out-of-pocket expenses. (Plf. App. 163). Indulging the evidence in the light most favorable to the plaintiff, the court finds that summary judgment on this damages issue is not appropriate.

b. Lost Earning Capacity

The plaintiff in a FELA case may recover compensatory damages for lost earning capacity if he produces competent evidence that his injuries have narrowed the range of economic opportunities available to him. *Fashauer v. New Jersey Transit Rail Operations, Inc*., 57 F.3d 1269, 1284 (3rd Cir. 1995). Vocational expert evidence on this issue is not necessarily required. *Id*. *See also Illinois Cent. Gulf R. Co. v. Russell*, 551 So.2d 960, 963 (Ala..1989)(finding district court did not err in submitting issue of lost earnings capacity to jury in FELA case despite the absence of expert testimony when facts sought to be proven can be fairly and reasonably inferred from competent evidence adduced at trial and the inferences lie within common knowledge).

Union Pacific asserts that Danko has not suffered a loss of earning capacity given that he

---

[9] Awards for future earnings and medical expenses are reduced to present value, but awards for pain and suffering are not. *O'Byrne v. St. Louis Sw. Ry. Co.*, 632 F.2d 1285, 1286 (5th Cir. 1980)

still has the same engineering job he has held for approximately fifteen years, and following his surgeries in 2003, was released for work without restriction. There is also no expert economist report in the summary judgment record addressing a loss of earnings power, but during his deposition, Danko reported that he has had to stay off work on occasion since 2003 because of his various injuries. (Plf. App. 36). By affidavit, he supplemented this testimony by specifying that he has "laid off" work an average of six days each month since February 2003, causing him to lose wages for fifty or more days each year. (Plf. App. 162-63). Indulging the evidence in the light most favorable to the plaintiff, the court finds that there are genuine issues of material fact regarding a loss in Danko's earning capacity attributable to his injuries.

ORDER

Defendants' Motion for Summary Judgment is granted with respect to Danko's causes of action for aggravation of a preexisting condition, negligent assignment, and violations of the Locomotive Inspection Act. The motion is denied in all other respects.

SIGNED JUNE 28, 2007.

/s/ Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE